IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES A. PALUCH, JR.** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-06-01751** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **J. DAWSON,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Presently before the court is a motion to compel production of documents filed by Plaintiff James A. Paluch, Jr. (Doc. 149.) Specifically, Paluch is seeking responses to three separate requests for production of documents he served upon Defendants. For the reasons that follow, the motion to compel (Doc. 149) will be granted in part and denied in all other respects.

## I. **Background**

Paluch initiated this civil rights action pursuant to 42 U.S.C. § 1983 on September 7, 2006, while confined at the State Correctional Institution in Camp Hill, Pennsylvania ("SCI-Camp Hill").[1] (Doc. 1.) Paluch sets forth allegations against several employees of the State Correctional Institution in Huntingdon,

---

[1] Paluch is currently incarcerated at the State Correctional Institution at Fayette, in LaBelle, Pennsylvania ("SCI-Fayette").

Pennsylvania ("SCI-Huntingdon" or "SCIH"), his former place of confinement.

He contends that Defendants violated his constitutional rights by failing to protect

him from his cellmate, Roger Smith, whom he contends has a history of aggressive

and assaultive behavior.  Specifically, Paluch alleges that he informed Defendants

of his fear for his own safety before Smith assaulted him in their cell on September

9, 2004.  As relief he seeks compensatory and punitive damages.

Defendants filed an answer to the complaint on January 9, 2007.  (Doc. 38.)

Since that time, the parties have been engaging in discovery.  On April 15, 2008,

the court issued an amended order setting the deadline for completion of discovery

for July 14, 2008.  (Doc. 163.)  Outstanding are issues relating to discovery

disputes regarding three separate requests for production of documents (Doc. 149)

served upon Defendants.  Those issues will be discussed herein.

## II.   <u>Discussion</u>

Generally, courts afford considerable latitude in discovery in order to ensure

that litigation proceeds with "the fullest possible knowledge of the issues and facts

before trial."  *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).  The polestar of

discovery is relevance.  Relevance for discovery purposes is defined broadly.  The

Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged

matter that is relevant to any party's claim or defense . . . .  Relevant information

need not be admissible at the trial if the discovery appears reasonably calculated to

lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  "[A]ll

relevant material is discoverable unless an applicable evidentiary privilege is

asserted.  The presumption that such matter is discoverable, however, is

defeasible."  *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).  Rule 26(b)(2)

authorizes a court to limit discovery where

> (i) the discovery sought is unreasonably cumulative or duplicative, or
> is obtainable from some other source that is more convenient, less
> burdensome, or less expensive; (ii) the party seeking discovery has
> had ample opportunity to obtain the information sought by discovery
> in the action; or (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of the case, the
> amount in controversy, the parties' resources, the importance of the
> issues at stake in the action, and the importance of the discovery in
> resolving the issues.

Fed. R. Civ. P. 26(b)(2).  However, when there is no doubt about relevance, a

court should tend toward permitting discovery.  *Stabilus v. Haynsworth, Baldwin,*

*Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265-66 (E.D. Pa. 1992).

Federal Rule of Civil Procedure 37 allows a party who has received evasive

or incomplete discovery responses to seek a court order compelling additional

disclosure or discovery.  The party seeking the order to compel must demonstrate

the relevance of the information sought.  The burden then shifts to the opposing

3

party, who must demonstrate in specific terms why a discovery request does not

fall within the broad scope of discovery or is otherwise privileged or improper.

*Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

On four separate occasions during the discovery process in the instant

matter, Paluch served a request for production of documents on the Defendants.

Defendants responded to the requests by providing documentation or reserving the

right to supplement their response at a later date, or by objecting on the basis of

relevancy, privilege, or security concerns.  (*See* Doc. 152.)  At issue here are

Defendants' objections to Paluch's second, third, and fourth requests for

production of documents.  The court will review the separate requests and

responses thereto at issue here in an effort to resolve the instant discovery dispute

and place the case back in a posture to be resolved.

### A.    Paluch's Second Request for Production of Documents

Defendants have objected to several of Paluch's requests in his second

request for production of documents.  Those requests and objections are detailed

as follows.

### 1.    Request No. 1

In Request No. 1, Paluch requested a number of grievances, filed

presumably by Paluch, in 2004 prior to and following the alleged incident on

4

September 9, 2004.  (Doc. 152 at 2-3.)  Defendants objected, reasoning that the grievances requested are "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."  (*Id*. at 3.)  Specifically, Defendants note that the grievances relate to various concerns such as requests for phone cards, photocopies, denial of yard time, property restrictions, and a missing washcloth. (*Id*.)

In the instant motion, Paluch indicates that these grievances are necessary to show the pattern of harassment committed by Defendants upon Paluch.  (Doc. 150 at 6.)  In their response to the instant motion Defendants note that these grievances were included in Paluch's DC-15 file, which Paluch was permitted to review during this discovery process.  (Doc. 155 at 4.)

While Defendants do note that Paluch was permitted to review his DC-15 file which contained these grievances, the court agrees with Paluch that his grievances filed prior to the September 9, 2004, incident may be relevant.  Thus, Defendants will be directed to provide Paluch with copies of grievance numbers 80596, 85811, 87014, 87926, and 88533.

## 2.   Request Nos. 5 & 12

In Request No. 5, Paluch requested all DC-141 Part 3 (Periodic Review Committee) reports relating to Defendant Smith's time spent in the Restricted

Housing Unit ("RHU") from July 2004 through November 2004.  (Doc. 152 at 4.)

In Request No. 12, Paluch requested to review and inspect the DC-14 and DC-15

files of Defendant Smith.  (*Id*. at 5.)  Defendants objected to both requests based

on the fact that any Periodic Review Committee reports on inmates or DC files are

confidential and not normally shared with other inmates.  (*Id*. at 4, 6.)  Defendants

did note, however, that should Paluch obtain a signed Authorization Form from

Defendant Smith, prison officials would process his request.  (Doc. 155 at 4.)  In

addition, Paluch has been provided with Defendant Smith's misconduct report

history.

The court finds Defendants' response to be a sufficient resolution of this

request and will not direct the production of any further documentation in

response to said request.

### 3.   <u>Request No. 11</u>

In Request No. 11, Paluch requested that he be permitted to review and

inspect his DC-14 and DC-15 files.  (Doc. 152 at 5.)  He also requested that the

Department of Corrections ("DOC") make photocopies of these records for him.

(*Id*.)  In their response, Defendants objected to Paluch reviewing the confidential

portions of those records, but informed him that he could submit an application to

review the non-confidential portions.  (*Id*.)  Further, Defendants indicated that Paluch would be charged for photocopies.  (*Id*.)

In the instant motion, Paluch indicates that he has been permitted to review his DC-15 file, but not his DC-14 file.  (Doc. 150 at 7.)  On the contrary, in their response to the instant motion, Defendants indicate that Paluch has subsequently been permitted to review both files.  (Doc. 155.)  However, in correspondence addressed to the court and dated March 31, 2008, assistant counsel for Defendants informed the court that Paluch did not in fact review his DC-14 file, but that once the confidential information is removed from that file, it would be identical to his DC-15 file, which Paluch has previously inspected.

The court finds that, despite Defendants' remarks about the duplicate information contained in Paluch's DC-14 file, Paluch remains entitled to review that DC-14 file once the confidential information has been redacted.  Therefore, the court will direct Defendants to further respond to Paluch's request.

### 4.    Request No. 15

In Request No. 15, Paluch requested personal contact information of one Yvonne Briggs, a registered nurse employed by the DOC.  (Doc. 152 at 6.) Defendants objected to this request because release of such personal information would violate Ms. Briggs' privacy rights.

7

In the instant motion, Paluch indicates that Ms. Briggs was the nurse who treated him after the September 9, 2004, incident, and therefore her deposition testimony is necessary to the case. (Doc. 150 at 8.) He also indicates that he attempted to get this information from assistant counsel for Defendants, but his request was refused. (*Id*.) While the court agrees with Defendants that Ms. Briggs' personal information such as her home address and phone number are confidential, Paluch is entitled to know whether she remains in the employ of the DOC. Thus, Defendants will be directed to advise Paluch's counsel as to whether Ms. Briggs is currently in the employ of the DOC, and if so, coordinate with counsel for the taking of Ms. Brigg's deposition. If Ms. Briggs is no longer in the employ of the DOC, Defendants shall provide Paluch's counsel with Ms. Brigg's current home or business address for service of a subpoena.

### 5.   <u>Request No. 17</u>

In Request No. 17, Paluch requested certain DOC policies and procedures related to prison operations. (Doc. 152 at 7.) In response, Defendants indicated that the DOC policies are available through the prison law library. (*Id*.) However, Defendants objected to providing certain procedures manuals. (*Id*.) Specifically, Defendants refused to provide confidential procedures manuals related to DOC policies 6.3.1, "Facility Security," 6.5.3, "Single Celling (Z-Code) and Double

Celling," and 6.7.1, "Incident Command System," because their release would compromise safety and security in the institutions. (*Id*.)

The court agrees that Defendants' concerns are valid and that the above-referenced procedures manuals must be kept confidential in the interests of prison safety and security. However, in order to resolve this discovery dispute, the court will direct Defendants to provide the requested material to the court for *in camera* review in order to determine if any portions of the material can be redacted for use by Paluch.

Further, Defendants originally objected to provide confidential procedures manuals related to DOC policies 5.1.1., "Staff Development and Training," and 15.1.1, "Safety." (*Id*.) However, in response to the instant motion, Defendants withdraw that objection. (Doc. 155 at 6.) Therefore, the court will direct Defendants to further respond to Paluch's request with respect these procedures manuals.

### 6.   Request No. 19

In Request No. 19, Paluch requested that Defendants provide him with any relevant reports with respect to misconduct committed by Defendant Smith from the period of June 29, 2001, to the present. (*Id*. at 7.) Defendants objected to this request as "overbroad, irelevant and not reasonably calculated to lead to the

discovery of admissible evidence," but agreed to consider a more specific request and to provide Defendant Smith's misconduct record.  (*Id*.)

In the instant motion, Paluch renews his request.  (Doc. 150 at 8.)  In response to the instant motion, Defendants indicate that Paluch has been supplied with a copy of Defendant Smith's misconduct record.  (Doc. 155 at 6.)

The court finds that this is an adequate response to the request and will not direct the production of any further documentation in response to said request. Therefore, the motion to compel will be denied with regard to Request No. 19.

### 7.   **Request No. 22**

In Request No. 22, Paluch requested the last known address for former state inmate Charles Campbell.  (Doc. 152 at 8.)  Initially Defendants objected to this request, but in their response to the instant motion, they indicate that former inmate Campbell's last known address has been provided to Paluch's counsel. (Doc. 155 at 6.)  Therefore, the request is moot, and the motion to compel with respect to Request No. 22 will be denied.

### 8.   **Request No. 27**

In Request No. 27, Paluch requested that Defendants provide him with RHU logbook entries from a number of dates prior to and following the alleged September 9, 2004, incident.  (Doc. 152 at 10.)  Defendants agreed to provide

these entries, but with confidential information related to other inmates redacted. (*Id.*)

Paluch did receive these logbook entries, but in the instant motion, notes that the copies he received were illegible and requests that new copies be provided without redactions. (Doc. 150 at 9.) The court agrees with Defendants that confidential information with respect to other inmates may be redacted, but will direct Defendants to provide to Paluch's counsel an additional, legible, redacted copy of these records.

### 9.   Request No. 28

In Request No. 28, Paluch requested any security office reports or statements from April 27, 2004, or April 28, 2004, authored by Ashley Smith, a SCI-Huntingdon employee, which mention Paluch or Susan Quinn. (Doc. 152 at 10.) Defendants objected to this request as "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*)

In the instant motion, Paluch claims that Mr. Smith was involved in the decision to have Paluch placed in administrative custody on May 27, 2004, which, in turn, led to the RHU staff's harassment of Paluch and, eventually, to the September 9, 2004, incident. (Doc. 150 at 6.) In their response to the instant motion, Defendants note that Paluch has requested information which is remote,

11

and concerned events which took place months before the alleged September 9, 2004, incident.  (Doc. 155 at 5.)

The court fails to see the relevance of any possible statements from Mr. Smith on April 27, 2004, or April 28, 2004; however, erring on the side of caution, the court will direct Defendants to provide Paluch with any report prepared by Mr. Smith on either of those dates with respect to Paluch, if such a report exists.

## 10. <u>Request No. 30</u>

In Request No. 30, Paluch requested that Defendants provide him with copies of the DC-ADM 801, 802, and 001 policies which were in effect from May 26, 2004, to December 31, 2004.  (Doc. 152 at 11.)  Defendants responded by providing a copy of the inmate handbook, but reminded Paluch that he must pay for copies.  (*Id.*)

In the instant motion, Paluch claims that these policies from the relevant periods in 2004 were not in fact provided to Paluch.  (Doc. 150 at 9.)  In response to the instant motion, Defendants state that they will permit Paluch to review these policies from 2004.  (Doc. 155 at 7.)  The court finds that this is an adequate response to the request and will not direct the production of any further documentation in response to said request.

### 11.   __Request No. 32__

In Request No. 32, Paluch requested that Defendants provide him with a copy of DC-ADM 610 policy, "Food Services," in effect on August 20, 2004. (Doc. 152 at 11.)  In response, Defendants simply indicated that a copy of the inmate handbook had already been provided to Paluch.  (*Id*.)

In the instant motion, Paluch repeats his request, stating that the request in fact was never fulfilled.  (Doc. 150 at 10.)  In response to the instant motion, Defendants state that they will permit Paluch to review this policy from 2004. (Doc. 155 at 7.)  The court finds that this is an adequate response to the request and will not direct the production of any further documentation in response to said request.

### 12.   __Request Nos. 34 & 38__

In Request No. 34, Paluch requested any and all reports made by any DOC employee with respect to any allegations of abuse of any inmate committed by Defendants Schmidt, Dawson, Mosley, and Kendrick.  (Doc. 152 at 12.)  In Request No. 38, Paluch requested a list of any promotions, demotions, or job terminations of Defendants Schmidt, Dawson, Mosley, and Kendrick.  (*Id*. at 13.)

Defendants objected to these requests as "overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."  (*Id*. at 12-

13.)  Further, in their response to the instant motion, Defendants note that the court

previously addressed similar requests in Paluch's motion to compel responses to

his first request for production of documents.  (*See* Doc. 129.)  In that

memorandum and order, the court upheld Defendants' same objection, agreeing

that "Paluch is seeking information here which would be irrelevant to the

allegations contained in the instant complaint."  (*Id*. at 8.)  The court finds that the

same reasoning applies to Paluch's similar requests herein.  Thus, the motion to

compel will be denied with respect to Request Nos. 34 and 38.

### 13.  <u>Request No. 35</u>

In Request No. 35, Paluch requests that Defendants provide him with a copy

of the RHU inmate handbook from 2004.  (Doc. 152 at 12.)  Defendants

responded, stating that the 2004 handbook had already been provided to Paluch.

(*Id*.)

In the instant motion, Paluch repeats his request, claiming further that the

2004 handbook was returned to SCI-Huntingdon in 2005.  (Doc. 150 at 10.)  In

response to the instant motion, Defendants state that they will supply Paluch with

a copy of the 2004 handbook.  (Doc. 155 at 8.)  The court finds that this is an

adequate response to the request and will not direct the production of any further

documentation in response to said request.

14

14.   **Request No. 36**

In Request No. 36, Paluch requested the DOC policies and procedure

manuals for the following DOC policies: (1) 6.7.9, "Reporting of Extraordinary

Occurances, (2) 1.2.1, "Victim Services," and (3) 13.2.1, "Access to Health Care."

(Doc. 152 at 12.)  Defendants refused to provide the procedure manual for policy

6.7.9 due to safety and security concerns, but indicated that the other procedure

manuals could be obtained through the law library.  (*Id*.)

In the instant motion, Paluch repeats his request to review the procedure

manuals for the relevant policies.  (Doc. 150 at 10.)  In response to the instant

motion, Defendants reiterate that the procedure manual for policy 6.7.9. will not

be provided for security reasons.  (Doc. 155 at 8.)  Defendants do state, however,

that Paluch will be permitted to review the procedure manuals for the remaining

policies.  (*Id*.)  The court finds in part that this is an adequate response to the

request; however, in order to resolve this discovery dispute, will direct Defendants

to provide the procedure manual for policy 6.7.9 to the court for *in camera* review

in order to determine if any portions of it may be redacted for use by Paluch.

B.   **Paluch's Third Request for Production of Documents**

Defendants objected to Request No. 1 in Paluch's third request for

production of documents.  That request is detailed as follows.

15

In Request No. 1, Paluch requested copies of all grievances filed by Defendant Smith from June 2001 to present.  (Doc. 152 at 16.)  Defendants objected to the request as "overbroad and not reasonably calculated to lead to the discovery of admissible evidence."  (*Id*. at 17.)  Defendants did note, however, that they previously provided Paluch with a copy of Defendant Smith's misconduct history, as well as the misconduct filed with respect to Defendant Smith on September 9, 2004.  (*Id*.)

In the instant motion, Paluch renews his request, stating that he was not originally asking for misconduct reports; rather, he had requested grievances filed by Defendant Smith.  (Doc. 150 at 10.)  In response to the instant motion, Defendants state that such personal information of another inmate is not normally released.  (Doc. 155 at 8.)  They do note, however, that should Paluch obtain a signed Authorization Form from Defendant Smith, prison officials would process his request.

The court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to said request.

### C.   Paluch's Fourth Request for Production of Documents

Defendants have objected to several of Paluch's requests in his fourth request for production of documents. Those requests and objections are detailed as follows.

### 1.   Request No. 1

In Request No. 1, Paluch requested a copy of the transcript from his deposition taken on May 22, 2007. (Doc. 152 at 19.) In response, Defendants informed Paluch that a copy of his deposition transcript could be ordered directly from the court reporter or requested from his attorney.

In the instant motion, Paluch renews his request, simply stating that the transcript is in the possession of the Defendants and must be provided to Paluch. (Doc. 150 at 11.)  However, as Defendants note in their response to the instant motion, Paluch is not entitled to a free copy of his deposition transcript. (Doc. 155 at 9.) The court agrees with Defendants, finding that Paluch may order a copy of this transcript from the court reporter or either of his attorneys.

### 2.   Request Nos. 2, 19 & 32

In Request Nos. 2, 19, and 32, Paluch requested any and all grievances filed by SCI-Huntingdon inmates, relevant RHU logbook entries, and RHU inmate grievances from 2003, 2004, and 2005. (*See* Doc. 152 at 19, 24, 28.) Defendants

17

objected to these requests as "overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (*Id.*)  Further, Defendants noted that all relevant grievances relating to the cell fight between Paluch and Defendant Smith had already been supplied; however, if any further grievances or other relevant documentation was discovered, Defendants would supply Paluch with that information.  (*Id.*)

In the instant motion, Paluch claims that the information requested in all three requests is necessary to establish motive, intent, preparation, or plan, on the part of Defendant Dawson to direct Defendant Smith to attack Paluch in their cell. (Doc. 150 at 11.)  In addition, he claims that other prisoners may have filed grievances relating to the September 9, 2004, incident.  (*Id.* at 14.)  In response to the instant motion, Defendants again state that the requests are clearly overbroad. (Doc. 155 at 9.)

The court agrees with Paluch that should any grievances filed or logbook entries taken relate to the September 9, 2004, incident, he must be provided with that documentation.  Therefore, if a review by Defendants of the grievances and logbook entries filed during the relevant time period reveal additional relevant documentation, that information should be turned over to Paluch.  Defendants will be so ordered.

### 3.   **Request No. 3**

In Request No. 3, Paluch requested any and all documents and institutional records from SCI-Huntingdon relating to the allegations in Paluch's complaint from February 17, 2004, to January 9, 2007, the date Defendants answered the complaint.  (Doc. 152 at 20.)  Defendants objected to this request as "overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."  (*Id*.)  Further, Defendants noted that Paluch had already been provided with relevant documentation such as misconduct reports, inmate grievances, inmate request to staff forms, and logbook pages.  (*Id*.)

In the instant motion, Paluch repeats his request, adding that any additional documentation should be provided because "[i]f Major Doe sends a document to Supt. Smithers acknowledging that the videotape of the Sept. 9, 2004 incident was destroyed, such info., not contained in the DC-14 and DC-15 records would be admissible evidence."  (Doc. 150 at 11.)

The court agrees that this request is overbroad.  However, should the document suggested by Paluch exist, Defendants will be directed to provide such information to Paluch.

### 4. **Request Nos. 7 & 8**

In Request No. 7, Paluch requested the RHU logs from certain dates in 2004 and 2005. (*See* Doc. 152 at 21.)  In Request No. 8, Paluch requested RHU control station sign-in logs from certain dates in 2004 and 2005. (*See id.*)  In response to these requests, Defendants objected on the basis that not all dates in question are relevant to the September 9, 2004, incident, especially those dates that postdate the incident itself. (*Id.*)  Further, Defendants indicated that the relevant RHU logbook entries have already been provided to Paluch. (*Id.*)  Also, Defendants note that they will produce the additional RHU control station sign-in logs not previously provided. (*Id.*)

In the instant motion, Paluch claims that information from the additional dates in late 2004 and early 2005 are necessary to show whom the investigator, Pennsylvania State Police Trooper Daniel Sneath, interviewed in connection with the investigation. (Doc. 150 at 12.)  In response to the instant motion, Defendants claim that this information is redundant because Paluch's attorney, Attorney Swartz, has deposed Trooper Sneath about whom he interviewed as part of his investigation. (Doc. 155 at 10.)  In addition, Defendants note that Request No. 8 is now moot because they have produced copies of the RHU control station sign-in logs for August 23, 2004, through September 15, 2004. (*Id.*)

The court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to the instant request.

### 5.    <u>Request Nos. 9 & 10</u>

In Request No. 9, Paluch requested the identification of all non-DOC employees who entered SCI-Huntingdon from May 27, 2004, through December 31, 2004.  (*See* Doc. 152 at 22.)  Defendants initially objected to this request as irrelevant, (*see id.*), but in response to the instant motion, indicate that this request is now moot because they have supplied Paluch with a copy of his visit history for a date not previously produced, (Doc. 155 at 10).

The court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to said request.

In Request No. 10, Paluch requested the identification of all non-DOC employees who entered SCI-Huntingdon for the purposes of investigating the September 9, 2004, incident.  (Doc. 152 at 22.)  In response, Defendants directed Paluch to copies of the state police investigation conducted by Trooper Sneath and previously supplied to Paluch.  (*Id.*)

21

In the instant motion, Paluch repeats his request, questioning whether Trooper Sneath was the only state police officer to investigate the September 9, 2004, incident.  (Doc. 150 at 12.)  In response to the instant motion, Defendants assert that Trooper Sneath was in fact the only officer to investigate the incident, and that Attorney Swartz has previously deposed Trooper Sneath about his investigation.  (Doc. 155 at 10.)

The court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to said request.

### 6.    Request Nos. 11 & 12

In Request No. 11, Paluch requested any documentation related to any criminal charges filed against Defendants while on duty at SCI-Huntingdon. (Doc. 152 at 22.)  Defendants initially objected to this request as irrelevant.  (*Id.*)

In the instant motion, Paluch claims this information is admissible in order to impeach the credibility of the Defendants.  (Doc. 150 at 12.)  In response to the instant motion, Defendants again object, but also indicate that none of the Defendants have been convicted of a felony or *crimen falsi*, crimes of which are admissible for impeachment purposes.  (Doc. 155 at 11.)

The court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to said request.

In Request No. 12, Paluch requested any and all information concerning investigations of any Defendant during the course of his DOC employment related to allegations of abuse against any inmates.  (Doc. 152 at 22-23.)  Defendants objected to this request as irrelevant and not admissible as character evidence.  (*Id.* at 23.)

In the instant motion, Paluch claims this evidence is admissible to show motive and intent.  (Doc. 150 at 13.)  In response to the instant motion, Defendants again object, stating that any other prior bad acts by the Defendants would be generally inadmissible under Rule 404(b) of the Federal Rules of Evidence.  (Doc. 155 at 11.)

The court agrees with Defendants and will not direct the production of any further documentation in response to said request.

### 7.    **Request No. 16**

In Request No. 16, Paluch requested a list of all the SCI-Huntingdon facility administrators by name and rank or title from 2004 to 2005.  (Doc. 152 at 24.)  In response, Defendants named the superintendent and deputy superintendents.  (*Id.*)

In the instant motion, Paluch claims that the response is incomplete, as administrators also include, "majors, captains, lieutenants, CCPM, unit managers, FCPD, IEVC, business office manager, supt.'s asst., CHCA, principal, CAMs, and other facility staff who make decisions in an administrative capacity." (Doc. 150 at 13.) In response to the instant motion, Defendants state that they have already identified the relevant SCI-Huntingdon administrators. (Doc. 155 at 11.)

As Paluch has provided a more specific request, the court will direct Defendants to provide Paluch with a list of any other administrator who was a decision-maker in the instant case, should Defendants determine that any administrators in addition to those previously listed are relevant to the claims presented in Paluch's complaint.

## 8. Request Nos. 18 & 22

In Request Nos. 18 and 22, Paluch requested certain policy and procedure manuals relating to the operations of SCI-Huntingdon. (Doc. 152 at 24, 25-26.) In response, Defendants objected to the release of the confidential procedure manuals as their release may compromise the safety and security of the institution. (*Id*. at 24, 26.)

In the instant motion, Paluch claims that these manuals are necessary for his case against Defendants. (Doc. 150 at 13, 15.) He suggests that the court conduct

an *in camera* review of the material in order to determine if any portions of the documentation can be redacted for use by Paluch.  (*Id*. at 13-14.)  Further, he claims that SCI-Fayette, the institution where Paluch is currently confined, is denying him access to the policy procedures.  In response to the instant motion, Defendants repeat their assertion that releasing the procedure manuals would compromise the safety and security of the institution.  (Doc. 155 at 11-12.)

The court agrees that an *in camera* review by the court of the requested documentation is necessary to resolve this discovery dispute, and will direct the Defendants to provide the material in the instant requests for such review. Further, the court notes that two attorneys have entered their appearances on behalf of Paluch in this matter.  Those attorneys will most likely be able to assist Paluch in retrieving the requested documentation available by public access.

## 9.   **Request No. 20**

In Request No. 20, Paluch requested any and all documents related to: a) Grievance No. 95700, b) DC-141 No. A673515, and c) DC-141 No. A673516. (Doc. 152 at 25.)  Defendants initially responded by noting that copies of the relevant grievance and misconducts and related responses and appeals had already been provided.  (*Id*.)

In the instant motion, Paluch claims that additional relevant documentation exists and should be produced.  (Doc. 150 at 14.)  In the response to the instant motion, Defendants indicate that they have further responded to Paluch's request, and thus the request is now moot.  (Doc. 155 at 12.)

The court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to said request.

### 10.   Request No. 25

In Request No. 25, Paluch requested any and all documentation related to the SCI-Huntingdon officials' decision to place Paluch in administrative custody on May 27, 2004.  (Doc. 152 at 26.)  Defendants objected to the request as irrelevant, claiming that Paluch's placement in administrative custody is not at issue in this case.  (*Id*.)

In the instant motion, Paluch claims that the requested documentation relates to the events leading to the September 9, 2004, incident, and that the information is necessary for Paluch's case strategy.  (Doc. 150 at 15.)  In response to the instant motion, Defendants object, noting that Paluch has not identified any plausible link between the two events.  (Doc. 155 at 12.)

Having reviewed Paluch's claims in the complaint, the court will permit the discovery of the relevant requested documentation.  The Defendants will be directed to further respond to Paluch's instant request.

### 11.   **Request No. 29**

In Request No. 29, Paluch requested the names and inmate numbers of all inmates at SCI-Huntingdon who received misconduct reports for assaulting their cellmates in general population from 2000 to 2004, and in the RHU from 2000 to 2004.  (Doc. 152 at 27.)  Defendants objected to the request as "overbroad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence," stating that whether other inmates assaulted their cellmates during that time is not relevant to any issue in this case.  (*Id*.)

In the instant motion, Paluch claims that the information is necessary to show that Defendants "encourag[e] and plan[ ] to use prisoners to assault their cellmates."  (Doc. 150 at 15.)  In response to the instant motion, Defendants again claim that this information is overbroad and irrelevant, asserting that "[t]he issue in this case is whether the Defendants were aware of a serious risk of harm to the Plaintiff and were deliberately indifferent to that risk of harm."  (Doc. 155 at 13.)

The court agrees with Defendants that this information is overbroad and irrelevant, and thus will not direct the production of any further documentation in response to said request.

### 12.   <u>Request Nos. 30 & 31</u>

In Request Nos. 30 and 31, Paluch requested that Defendants prepare two separate documents: (1) a document listing how many inmates at SCI-Huntingdon were found guilty of assaulting other inmates or staff members by a hearing examiner in 2003, 2004, and 2005, and (2) a document listing how many inmates at SCI-Huntingdon were found guilty of fighting other inmates or staff members by a hearing examiner in the same time period.  (Doc. 152 at 27-28.)  Defendants objected to each request as "overbroad, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence," noting that whether other inmates were found guilty of such offenses is not relevant to any issue in the instant case. (*Id.*)

In the instant motion, Paluch withdraws his requests for information relating to assaults on or fighting with staff members, but claims the requested information with respect to other inmates is necessary to show a pattern of abuse by Defendants.  (Doc. 150 at 16.)  In response to the instant motion, Defendants object, claiming that the information is irrelevant, especially due to the fact that

Paluch is not challenging the bases for a finding of guilt against him by the

hearing examiner in his case.  (Doc. 155 at 13.)

The court agrees with Defendants that this information is overbroad and

irrelevant, and thus will not direct the production of any further documentation in

response to said request.

### 13.   <u>Request No. 33</u>

In Request No. 33, Paluch requested any and all documents listing how

many misconduct reports issued against inmates were filed by Defendants

Dawson, Schmidt, Mosley, and Kendrick.  (Doc. 152 at 28-29.)  Defendants

objected to the request as "overbroad, irrelevant, not reasonably calculated to lead

to the discovery of admissible evidence," noting that all relevant misconduct

reports had previously been provided.  (*Id*. at 29.)

In the instant motion, Paluch claims these records, if they exist, will be used

for "statistical comparisons in order to establish a pattern of abuse."  (Doc. 150 at

16.)  In response to the instant motion, Defendants repeat their objection, stating

that the only relevant misconducts are those which Defendant Dawson issued to

Paluch and Defendant Smith for fighting.  (Doc. 155 at 13.)

The court fails to see the relevance of such records, if they exist, and thus agrees with Defendants.  As a result, the court will not direct the production of any further documentation in response to said request.

### 14.   <u>Request No. 34</u>

In Request No. 34, Paluch requested a list of grievances filed by fourteen (14) inmates from January 1, 2000, through December 31, 2004.  (Doc. 152 at 29.) Defendants objected, noting that the only relevant grievances are those which relate to the September 9, 2004, incident.  (*Id*. at 29-30.)  Defendants also indicated that any relevant grievances filed by the 14 inmates relating to the incident at issue would be produced.  (*Id*. at 30.)

In the instant motion, Paluch claims these grievances are necessary because these other inmates may have filed grievances related to the September 9, 2004, incident.  (Doc. 150 at 16.)  In response to the instant motion, Defendants claim that they have supplied one grievance filed by inmate John Boskie, whose cell adjoined that of Paluch and Defendant Smith. (Doc. 155 at 14.)

The court agrees with Defendants that the only relevant grievances of other inmates are those which relate to the September 9, 2004, incident.  A request for a non-party inmate's entire grievance record is overbroad.  However, should Defendants locate any relevant grievances filed by the 14 listed inmates on or

around the time of the September 9, 2004, incident, those records should be

produced.

## III.   <u>Conclusion</u>

Based on the foregoing, it is clear that Defendants have largely complied, in

a good faith effort, with the discovery requests served upon them by Paluch.  They

have made documents available for inspection which are not privileged, irrelevant,

overbroad or objectionable on any other basis.  However, certain requests,

discussed herein, remain outstanding.  As such, Defendants will be directed

further respond to Paluch's requests, as outlined herein, on or before July 28,

2008.  Further, Defendants will be directed to respond to the court's order

concerning the court's *in camera* review of certain documents on or before July

28, 2008.

An appropriate order will issue.


                                        s/Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

Dated:  July 17, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES A. PALUCH, JR.** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-06-01751** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **J. DAWSON,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

**AND NOW**, this 17th day of July, 2008, upon consideration of Plaintiff's

motion to compel production of documents (Doc. 149), and for the reasons set

forth in the accompanying memorandum, it is hereby **ORDERED** that:

1.  The motion to compel (Doc. 149) is **GRANTED** in part as follows:

    a.  Defendants are directed to further respond to the following

requests from Plaintiff's Second Request for Production of Documents **on**

**or before July 28, 2008**: Request Nos. 1, 11, 15, 17, 27, and 28.

    b.  Defendants are directed to further respond to the following

requests from Plaintiff's Fourth Request for Production of Documents:

Request Nos. 2, 3, 16, 19, 25, 32, and 34.

    c.  Defendants are directed to provide to the court for *in camera*

review the procedure manuals referenced in the following requests from

Plaintiff's Second Request for Production of Documents **on or before July 28, 2008**: Request Nos. 17 and 36.

  d.  Defendants are directed to provide to the court for *in camera* review the procedure manuals referenced in the following requests from Plaintiff's Fourth Request for Production of Documents **on or before July 28, 2008**: Request Nos. 18 and 22.

2.  The motion is **DENIED** in all other respects.


        <u>s/Sylvia H. Rambo</u>
        SYLVIA H. RAMBO
        United States District Judge